Good morning, Your Honors. May it please the Court. Attorney Michael Rohr for Petitioner Shintai Zhai. The primary issue in Mr. Zhai's matter is whether the Board of Immigration Appeals' decision is supported by substantial evidence in upholding the immigration judge's decision that the petitioner lacked credibility after a Department of Homeland Security Forensics Document Laboratory examiner conclusively determined that Petitioner's Chinese ID was counterfeit. Notably in this matter, Petitioner testified credibly and consistently in all other aspects of his claim. Thus, we fall on the issue of... Talk, if you don't mind, talk right into that, would you please? Yes, Your Honor. Thank you. Thus, we fall directly on the issue as to Petitioner's Chinese national ID. Petitioner argues that the findings of the Forensics Document Laboratory examiner do not constitute substantial evidence, as there's not an adequate basis to find that the document is conclusively counterfeit. In this matter, the Forensics Document Laboratory examiner, Elaine Wooten, for the Department of Homeland Security, determined that a simple statement of his Chinese national ID, that it did not conform to the print detail contained in comparable specimens, and it was not produced using the same printing methods. In that regard, Elaine Wooten testified as follows, essentially in summary. She testified that... You're talking now about what, the Chinese identification card? Yes, Your Honor, I am talking about the Chinese. So, you knew there was a problem? Yes, Your Honor. Now, it's been a couple of years. All right, Your Honor. What have you done about it? Your Honor, since Respondent's been in the appellate stages, he had attempted, this is off the record, it's not in the CR, he did attempt to... I asked you what you did about it. He's attempted to obtain a passport from the People's Republic of China. It's the consulate in the United States. He has been unable to do so because he lacks original documentation to do that. Okay. So, what did you do to help him along? Well, Your Honor... What is... I mean, what have you done in the past couple of years? Your Honor, we've tried to obtain any identity documents that would be available to him. He provided a notarial birth certificate to the court. The agency, the Department of Homeland Security, remains in possession of his allegedly counterfeit Chinese ID and notarial birth certificate. He attempted to obtain a People's Republic of China passport, but was unable to do so. At this point, I don't see what... Because one of the issues is what his real identity is. Correct. Yeah. That's absolutely... He did provide a notarial birth certificate, which the judge ultimately determined in her decision that proper foundation was not laid for that document. However, that was initially presented in the immigration judge's decision, and as this court's found in other cases, that foundation may be laid in any manner. There's no reason to discount petitioner's notarial birth certificate in this matter. There's nothing to show that that document was, in fact, not valid, not genuine. Well, he comes up with other documents that they've determined are not valid. The other two documents that were submitted to the forensics document examiner was a hospital record and a medical letter, and they could not authenticate those documents because they did not have specimens on file for those two documents. What did you do to try to authenticate those documents? Well, Your Honor, those documents are in the possession of the government. There was no independent investigation. There was no independent forensics document examination of those documents. The petitioner's documents remain in the possession of the Department of Homeland Security, the original documents. Well, did you try to argue that the document was not fraudulent? The Chinese identification card? I believe the answer is yes, Your Honor, and the reason I state that is petitioner never had any reason to doubt that that document was not, in fact, genuine. He stated that he obtained the document himself from a public security bureau in China. He left that document in China. It was in a wallet. His wife mailed it to him once he was in the United States. Petitioner had no reason to believe that that document was, in fact, counterfeit. In fact, the reason he has no explanation is because he believes it's a genuine document. And why couldn't the birth certificate have been further authenticated? He got that later, right? It wasn't his original birth certificate? Correct. Again, outside of the record, it's my understanding, representing Chinese nationals, that standardized birth certificates were not issued in China until later years. So petitioner being age 49, I believe, at the time of trial, would not likely have had an original birth certificate. A notarial birth certificate is essentially someone going to an official saying, was this person born? So it's secondhand nature, I will admit to that. But there is no original birth certificate for people, and I believe it was in the 1980s, but I cannot be correct on that standard. And who went and got that notarial birth certificate? His wife did. Right. So why isn't there any declaration or anything from his wife explaining all that? Well, one argument is that he provided those documents at the beginning of the trial. He was never on notice to provide a declaration. I don't want to default to that argument, but he did appear before four different immigration judges on 14 different occasions, and he was never on notice to provide additional documentation as to his identity. At one point there was some discussion as to a one-year issue of documents, but not two identity documents in that time frame. In fact, the trial was split into two sessions because the forensic document examiner was not available during one of those. And in fact, when the judge adjourned that matter, she asked for him to bring back his witness, his church witness, to attest to his attendance in the United States. She could have easily stated that she wanted additional documents as to foundation or as to his identity at that point. What about after this IJ decision issued, though? Could you ask to submit something further and ask to reconsider or something? I mean, it seems like a lot of time has passed without any documentation being offered. Well, once the immigration judge's decision is issued and it's appealed to the agency, the Board of Immigration Appeals, it's a final decision. The solution to that would be a motion to reopen. Petitioner has tried, as I stated, to obtain identity documentation in the form of a People's Republic of China passport. I simply don't believe there's another document out there that would prove his identity. Well, he's been in this country since, when did he enter? 2001, August 29th, I believe. And there's nobody back in China who would know who he was and be able to give a... Well, his wife and, I mean, there's other, if it meant declarations, yes. However, these are declarations of persons that are not available for, likely available for cross-examination. Petitioner believes... When he arrived in this country, he came across the border. Through an airport. He entered with a Korean passport, and it was subsequently taken by the smuggler who assisted his entry into the United States. He entered where at that time when it was taken? You know, I don't believe a record is clear as to the airport in which he entered. I can't assume. He entered here in the United States? Yes. Not through the Mexican or Canadian border. He entered at an airport. His testimony was credible in that regard. Has he had any kind of identification here that could be used to confirm that he hasn't committed any crimes here? Is there any way to identify who he has been since he's been here? It's my understanding, again, outside the record, he does have a California driver's license or California ID, and he could submit California Department of Justice fingerprint results showing a lack of a criminal history in this matter. To my knowledge, he does not have a criminal history. What airport of entry did he enter? The record does not state. I believe it's Los Angeles International, but I cannot state that with certainty, Your Honor. Well, did you check the records? He never states at a trial. Where did he enter from? Is that in the record? From Korea, I believe. He came from China to Korea, sold to the United States. That's when he gave the passport back. Correct, to the smuggler. And then he had a Chinese passport when he arrived, you're saying? No, he's never had a Chinese passport, and he's been unable to obtain one because his identity documents, if we want to call them that, are with the Department of Homeland Security. Well, how did he get into the country to begin with? With a Korean passport, a false identity, a different name, a valid Korean passport. But not for him. Correct, not for him. Not with him, okay. I'd just like to state that I do believe that even with the adverse credibility finding, even with the finding that the document was counterfeit, I believe the M&A is on point in this matter. Thank you. Okay, thank you. Thank you. Good morning, Your Honors, and may it please the Court, Alexander Lutz for the Attorney General. Your Honors, the record in this case does not compel the conclusion that Mr. Zhai presented credible testimony where he repeatedly testified to the authenticity and the origins of a document that is uncontrovertedly counterfeit. How could he have controverted it, though? Well, Your Honor, he could have provided some form of evidence that the document was not counterfeit. It's hard to imagine exactly what that would be, if that's your question. But the bottom line is that the standard under which this court reviews the record asks the court to look to see whether it can compel the conclusion that the document was not counterfeit. And here there's no evidence in the record at all to support the conclusion that the document was not counterfeit, let alone to compel that conclusion. Mr. Zhai twice conceded that the FDL document examiner, Elaine Wooten, was an expert. She provided voluminous testimony as to how she determined that this document was counterfeit. And there's just no evidence in the record going the other way. It's just hard to see what he could have done. I mean, if he's telling the truth that he actually got this document, it's a little bit hard to imagine what else he could have done than he tried to do here. You mean with respect to authenticating the document? Well, I believe the panel's questioning of Petitioner's counsel raised the possibility that he could have presented a declaration from his wife. I'm not sure that's present in the record. Right. That's for the birth certificate, though. But for the main identity document that she said was forged, he says he got it directly from the office, right? So isn't he the one who got it? And what else can he say? Well, Your Honor, that's a difficult question to answer because I think Your Honor is effectively asking what could he have done to prove the authenticity of a counterfeit document. And the answer to that is probably nothing. The document is counterfeit. It has been conclusively determined to be counterfeit. So it's difficult to imagine how he could have rehabilitated that. He could have produced other documents of identity to work around that problem. Well, we're basically concerned with his identity. That's correct. Who is he? Correct, Your Honor. Is he the guy who he says he is? Your Honor is correct. So he could have had an affidavit from his wife, or she could fly over here and testify. Those certainly could be options, Your Honor, yes. But at bottom, the determination that the agency reached in this case is that Mr. Zhai did not present credible testimony because he submitted a fraudulent document and repeatedly testified that it was authentic and testified as to how he got it for the court to determine. Well, you know, I had an experience once with one of my buddies from the service who went to Hiroshima, and then the Navy took the position that no Marines were at Hiroshima. But we got the manifest of his ship, and that was that he took Japanese expatriates who were in the Army, Japanese Army, back, and they offloaded at Hiroshima. And he also had a letter that he had written to his mother. And all he had was a poor copy of it, the older type duplication machines. And so the government examiner concluded that that was a forgery. We got another examiner who looked at it. This is when I was practicing law. No, no, I wasn't practicing law then. I was just trying to help him out. We got another examiner who looked at it, and they concluded that because of the condition of the document that it was genuine, you know, not to high certainty, but at least to a high probability. And so just because some expert says it's not genuine, maybe they fell down by not getting someone else to look at it. Well, I think, Your Honor, the key facts that distinguish the circumstances of Your Honor's colleague from the circumstances of this case are that Mr. Zhai didn't present any of the other kinds of documents that it sounds like your colleague had. And furthermore, I would note that in this case, Mr. Zhai had four years. I know. It kind of sounds a little like maybe the ball was dropped. That's possible. Well, look, you know, he's lived here for 14 years, goes to church, studies the Bible, has no criminal record. Is that right? I'm unaware as to whether Mr. Zhai has any criminal record. Well, that's what I understand. And he's been working, paying his taxes. Do you think there's other forms of relief that might be open to him? It sounds to me like Your Honor is inquiring about the possibility of an exercise of prosecutorial discretion. Ah, you picked up right on. Thank you, Your Honor. And the answer to your question is I'm not aware that Mr. Zhai has affirmatively reached out and asked for that form of relief, but our office did affirmatively inquire with the Department of Homeland Security, and their answer is that prosecutorial discretion has been declined in this case. So that has been explored, and unfortunately the answer is no. Your Honors, this case presents... Well, when did he apply? For prosecutorial discretion, Your Honor? No. Never. Our office affirmatively reached out and asked the Department of Homeland Security... Whether he was eligible? ...whether they would consider an exercise of prosecutorial discretion. When was that? When was that, when he filed his petition for review? That was very recently, Your Honor, over the last few days. So that's when you made the inquiry? Yes, Your Honor. Yeah, but, you know, they haven't talked to him about it. They haven't met him. Well, Your Honor, I would point out that... You know, it's not unusual for Homeland Security to first go around to deny it, and then later on grant it. Well, that may be the case in other circumstances, Your Honor, but that fact pattern isn't presented here. What we have here is a board decision that is supported by substantial evidence and a decision from the Department of Homeland Security that prosecutorial discretion is not appropriate at this time. Why did you reach out to them? Simply because I anticipated that Your Honors may ask. You know, you're starting to get a little scary to me. I apologize for that, Your Honor. I would point out, Your Honors... You did that, huh? I expected that Your Honors may ask, and so I went ahead and affirmatively inquired as to whether prosecutorial discretion might be appropriate, and the answer I received was no. What caused you to reach out and inquire? It's on the panel. What gave you the idea? I make a habit of doing that in all cases, Your Honor, because it's a question that may come up, and I hate to not be able to answer a question from the panel. Your Honors, in this case, to determine that Mr. Zhai provided... Do you do that routinely? Except in cases where it's clearly not warranted based on the facts. Here there are a few facts that cut either way, and as I mentioned, it's not clear that Mr. Zhai has reached out. Your Honors, I'd like to make just one final point, if I could, which is that in order to determine... But, you know, you have an issue here, at least to my mind, as far as the competence of counsel is concerned. I don't know why they'd reach out to the wife and get an affidavit from her. Lots of things you could look at here. There certainly are, Your Honor, but there's only one thing... I mean, you know, he has no criminal record. You checked that, didn't you? I did not, Your Honor, no. How come? Well, I don't have the capacity to do that, Your Honor, respectfully. I inquired with the Department of Homeland Security. You can't ask the Department of Homeland... You're the Justice Department, and you can't check on whether someone has a criminal record or not? I specifically cannot, Your Honor. Well, you can ask somebody else to do it. Which is what I did, Your Honor, respectfully. And did they check to see whether he had a criminal record or not? Your Honor, they didn't inform me as to what steps they took to reach this determination. They merely provided me their determination. Your Honors, I see my time has expired. Would it be possible... What is the government's position here? Do you think that it's an inference from this record that he's not Chinese at all? Your Honor, my answer to that would be that the burden falls on Mr. Zhai to demonstrate his identity and his nationality. The Court has held that that is a fundamental aspect of a claim for asylum that does go to the heart of a case, and I'm citing to Kaluma there, a decision from this Court in 2007. So that's an element of Mr. Zhai's claim. He has the burden to establish it. In this case, he failed to do so. And, Your Honors, if I may be permitted to make just one more point, it would be this. For the Court to determine that Mr. Zhai provided credible testimony, the Court would have to reconcile the uncontrovertedly counterfeit nature of the document with Mr. Zhai's repeated testimony as to its authenticity and its origins, which requires the Court to arrive at one of two possible explanations where both of those things can be true. The Court would have to determine that the record compels the conclusion that the Chinese government issued Mr. Zhai a counterfeit document in the manner he suggested, or that he received an authentic document from the Chinese government, asked his wife to send it to him, and inexplicably his wife did not do that, but instead procured a counterfeit ID card, mailed it to him, and then lied to him and said that that was his actual ID card. The Court would have to find that the record compels one of those two conclusions in order to reconcile Mr. Zhai's testimony with the uncontroverted fact that this document is counterfeit. So that's checkmate, huh? We would submit that, yes, it is, Your Honor. And we would respectfully request that the panel deny the petition for review. Are there any further questions from the panel? Any rebuttal? Thank you, Your Honor. Do you want to say something? Yes, Your Honor. I mean, you're the expert on all this. You do all this all the time. I would like to clarify one thing for the record, Your Honor. In these matters, petitioners are instructed by their counsel to obtain certain documents, certain additional documents to support their case, in writing, and provided to them in their native language. Not always are petitioners able to secure those documents. Whether it's because they didn't try, or whether they're not available, or they're afraid to get those documents, they're simply not always available, such as corroborating documents. Yeah, but you're representing a lot of Chinese people, right? Don't you have any contacts there? I do not have contacts with the government of China, Your Honor. No, but you know people in Beijing, don't you? Not to obtain documents, Your Honor. I don't know. I mean... I have an extensive list, and I go through items with each and every case of what documents they need to support their case, and I will let the court know this, and this circuit know, that he was provided with adequate notice in that matter of what additional documents he could try to obtain. So you just leave it up to your client? Your Honor, I try the best I can to assist my clients, but whether or not they are able to secure those documents, that's another story. Sometimes their families are afraid to mail documents from China to the United States. Sometimes they can't get them, or they're not of the means to obtain those documents. But I will let this court know that I do ensure that the clients are instructed of what documents they need to corroborate their case, especially under the Real ID Act. Thank you. Okay. Thank you very much for your time. Thank you. The matter is submitted.
judges: Schroeder, Pregerson, Friedland